# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| STEPHEN BUSHANSKY, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | Case No. |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | **CLASS ACTION COMPLAINT** |
| CAPITAL BANK FINANCIAL CORP., R. EUGENE TAYLOR, MARTHA M. BACHMAN, RICHARD M. DEMARTINI, PETER N. FOSS, WILLIAM A. HODGES, SCOTT B. KAUFFMAN, OSCAR A. KELLER III, MARC D. OKEN, ROBERT L. REID, and WILLIAM G. WARD SR., | ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants, | ) ) | |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of the public stockholders of Capital Bank Financial Corp. ("Capital Bank" or the "Company") against Capital Bank and the members of Capital Bank's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of their attempt to sell the Company to First Horizon National Corporation ("First Horizon") (the "Proposed Transaction").

2. On May 4, 2017, Capital Bank issued a press release announcing it had entered

1

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA

STEPHEN BUSHANSKY, On Behalf of Himself
and All Others Similarly Situated,

        Plaintiff,

        v.

CAPITAL BANK FINANCIAL CORP., R.
EUGENE TAYLOR, MARTHA M. BACHMAN,
RICHARD M. DEMARTINI, PETER N. FOSS,
WILLIAM A. HODGES, SCOTT B.
KAUFFMAN, OSCAR A. KELLER III, MARC
D. OKEN, ROBERT L. REID, and WILLIAM G.
WARD SR.,

        Defendants,

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this class action on behalf of the public stockholders of Capital Bank Financial Corp. ("Capital Bank" or the "Company") against Capital Bank and the members of Capital Bank's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of their attempt to sell the Company to First Horizon National Corporation ("First Horizon") (the "Proposed Transaction").

2.    On May 4, 2017, Capital Bank issued a press release announcing it had entered

1

into an Agreement and Plan of Merger (the "Merger Agreement") with First Horizon. Under the terms of the Merger Agreement, each holder of Capital Bank common stock will be entitled to receive cash or stock with a value equivalent to 1.750 First Horizon shares and $7.90 in cash for each Capital Bank share held, subject to the election allocation and proration provisions of the Merger Agreement. In the aggregate, Capital Bank stockholders will receive a mix of approximately 80 percent stock and 20 percent cash. After closing, Capital Bank stockholders collectively will own approximately 29 percent of First Horizon's common shares and will have received approximately $411 million in cash. The total transaction value, at First Horizon's closing stock price on May 3, 2017, is $2.2 billion.

3. On June 29, 2017, First Horizon and Capital Bank filed a Registration Statement on Form S-4 (the "Registration Statement"), with the SEC. The Registration Statement, which recommends that Capital Bank stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's and First Horizon's financial projections, utilized by one of the Company's financial advisors, Sandler O'Neill & Partners LLC ("Sandler"), in its financial analyses; (ii) the valuation analyses prepared by Sandler in connection with the rendering of its fairness opinion; and (iii) the background process leading up to the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Capital Bank stockholders need such information in order to cast a fully-informed vote or seek appraisal in connection with the Proposed Transaction.

4. In short, unless remedied, Capital Bank's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff

seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Capital Bank is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Capital Bank common stock.

9.     Capital Bank is a Delaware Carolina corporation and maintains its corporate headquarters at 4725 Piedmont Row Drive, Suite 110, Charlotte, North Carolina 28210. Capital Bank's common stock is traded on the NASDAQ Global Select Market under the ticker symbol

3

"CBF."

10.      Defendant R. Eugene Taylor ("Taylor") has served as Chairman of the Board and Capital Bank's Chief Executive Officer ("CEO") since Capital Bank's founding in 2009.

11.      Defendant Martha M. Bachman ("Bachman") has been a director of the Company since October 2012.

12.      Defendant Richard M. DeMartini ("DeMartini") has been a director of the Company since Capital Bank's founding in 2009.

13.      Defendant Peter N. Foss ("Foss") has been a director of the Company since Capital Bank's founding in 2009.

14.      Defendant William A. Hodges ("Hodges") has been a director of the Company since Capital Bank's founding in 2009.

15.      Defendant Scott B. Kauffman ("Kauffman") has been a director of the Company since October 2016.

16.      Defendant Oscar A. Keller III ("Keller") has been a director of the Company since October 2012.

17.      Defendant Marc. D. Oken ("Oken") has been a director of the Company since Capital Bank's founding in 2009.

18.      Defendant Robert L. Reid ("Reid") has been a director of the Company since October 2016.

19.      Defendant William G. Ward Sr. ("Ward") has been a director of the Company since October 2012.

20.      The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants."

4

## OTHER RELEVANT ENTITIES

21.     First Horizon is a Tennessee corporation, with its principal executive offices located at 165 Madison Avenue, Memphis, Tennessee 38103.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Capital Bank common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

23.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of June 26, 2017, there were approximately 35,357,898 shares of Capital Bank common stock outstanding. All members of the Class may be identified from records maintained by Capital Bank or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the

5

Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

25.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

28.     Charlotte, North Carolina-based Capital Bank (formerly North American Financial Holdings, Inc.) was incorporated in Delaware in 2009 and operates as the bank holding company for Capital Bank Corporation (the "Bank"), a North Carolina state chartered bank and a wholly-owned subsidiary of Capital Bank.   The Bank provides various commercial and consumer banking products and services, and ancillary financial services to individuals and businesses in the southeastern region of the United States.  As of  March 31, 2017, the Bank operates 192 branches in Florida, North Carolina, South Carolina, Tennessee and Virginia through which it offers a wide range of commercial and consumer loans and deposit products, as well as ancillary financial services.

6

29. Capital Bank recently acquired CommunityOne Bancorp ("CommunityOne"), expanding its franchise in North Carolina by 45 branches and $2.4 billion in assets. According to the November 23, 2015 press release announcing the deal, in connection with the acquisition Capital Bank estimated single-digit earnings per share ("EPS") accretion in 2016 excluding merger charges and double digit accretion in 2017 and thereafter. Capital Bank announced the closing of its acquisition of CommunityOne on October 26, 2016.

30. On April 21, 2017, the Company announced its first quarter 2017 financial results. For the quarter, Capital Bank reported net income of $20.9 million, a 112% increase from the first quarter of 2016 and GAAP net income per diluted share of $0.39. Core net income increased to $23.9 million, a 42% increase from the first quarter of 2016. Core net income per diluted share was $0.45. In the press release, defendant Taylor commented on the Company's outlook, stating, "[w]ith the CommunityOne conversion now behind us, we are totally focused on high-quality loan and core deposit growth. Thanks to the consistent focus and efforts of Capital Bank's teammates, we're optimistic about the outlook." Chris Marshall, Capital Bank's Chief Financial Officer further stated: "[i]n addition to successfully completing the CommunityOne systems conversion, we've put in place new plans to rationalize excess facilities, which will help us achieve our stated profitability and return targets . . . ."

**The Sale Process**

31. During the fall and winter of 2016 – 2017, the Board discussed the potential for a strategic combination with a larger financial institution. After receiving feedback from a number of investment banking institutions regarding possible strategic alternatives, the Board tasked the Nominating and Governance Committee with recommending a financial advisor(s) to assist the Board.

7

32.     At a February 6, 2017 Board meeting, the Board and Capital Bank management discussed the financial institutions believed by Capital Bank management, after consultation with representatives of Sandler and UBS Investment Bank ("UBS"), to have a greater likelihood of serious interest in pursuing a combination transaction with Capital Bank. The Board approved retaining Sandler and UBS as financial advisors to assist the Board in exploring strategic alternatives for the Company.

33.     Following the February 6, 2017 Board meeting, representatives of Sandler and UBS contacted seven financial institutions (including First Horizon) regarding their potential interest in pursuing a business combination transaction with Capital Bank. The seven financial institutions expressed interest in a potential business combination.

34.     Beginning on February 16, 2017, members of Capital Bank senior management, Sandler and UBS engaged in discussions with the respective financial institutions.

35.     Between February 14, 2017 and February 23, 2017, Capital Bank Financial entered into mutual confidentiality agreements with five (including First Horizon) of the seven financial institutions that had been contacted. The Registration Statement fails to disclose whether the confidentiality agreements contain standstill provisions that are still in effect and/or "don't-ask-don't-waive" standstill provisions that are presently precluding these parties from making a topping bid for the Company.

36.     Each party that entered into a mutual confidentiality agreement was granted access to certain non-public information. Subsequently, one of the five parties elected to pursue another transaction and discussions with that party ceased.

37.     In early March, Sandler and UBS contacted the four (including First Horizon) remaining financial institutions that had executed mutual confidentiality agreements and

8

requested that each party submit a non-binding preliminary indication of interest. The Registration Statement fails to disclose whether these parties were provided with a deadline by which to submit their indications of interest.

38. On March 15, 2017, Bloomberg LP published a report stating that, among other things, Capital Bank was working with advisers to explore a sale and had begun reaching out to potential buyers.

39. On March 27, 2017, First Horizon submitted a written indication of interest proposing a cash and stock transaction with the stock component based on a fixed exchange ratio in a range of 1.694 – 1.727 shares of First Horizon per Capital Bank share, and the cash component in a range of $7.70 – $7.85 in cash per Capital Bank share, with a total value of $38.50 - $39.25 per share based on First Horizon's March 24, 2017 closing price. First Horizon also proposed that defendant Taylor join First Horizon's board of directors following the merger and agree to render services to First Horizon for two years following the merger and requested that Capital Bank agree to enter into a thirty-day period of exclusivity.

40. At a March 30, 2017 Board meeting, Capital Bank management updated the Board on discussions with parties, including that one of the parties who had yet to enter into a mutual confidentiality agreement, referred to in the Registration Statement as Party A, had submitted a preliminary oral indication of interest, which did not include a specific price or price range. After discussion, the Board instructed Sandler and UBS to request a specific proposal from Party A. The Board authorized providing First Horizon with exclusivity for a thirty-day period from acceptance of the non-binding indication of interest if Party A did not submit a proposal and First Horizon improved their indication of interest.

41. Sandler and UBS subsequently requested that First Horizon improve the

9

financial terms of its proposal, agree to add a second member of the Capital Bank Financial board of directors to the combined company's board of directors and agree to a collar mechanism relating to the exchange ratio for the stock component of the merger consideration.

42. Party A continued to express interest in a transaction, but did not submit a written non-binding indication of interest, including the specific terms pursuant to which it would be willing to proceed with a transaction.

43. On April 4, 2017, First Horizon submitted an updated indication of interest providing for the stock component of the merger consideration to be based on a fixed exchange ratio in a range of 1.72 – 1.74 First Horizon shares per Capital Bank share and for the cash component of the merger consideration to be in a range of $7.70 – $7.90 in cash per Capital Bank share, valued at $39.33 - $39.90 per share based on First Horizon's April 3, 2017 closing price. First Horizon also confirmed that it would appoint two Board members to the combined company's board of directors following the merger.

44. The next day, Capital Bank and First Horizon entered into an exclusivity agreement providing for an exclusive negotiation period through May 5, 2017. The parties subsequently conducted due diligence and negotiated the remaining terms of the merger agreement.

45. On April 28, 2017, First Horizon submitted, in writing, an affirmation of its proposal for a business combination in which Capital Bank stockholders would receive 1.74 shares of First Horizon common stock and $7.90 in cash per Capital Bank share. First Horizon's proposal did not provide for a collar, as requested by the Board.

46. At an April 30, 2017 Board meeting, Sandler discussed with the Board other strategic alternatives available to Capital Bank and, on a preliminary basis, the delivery of a

fairness opinion if requested to do so by the Company. The Registration Statement fails to disclose whether the Board similarly discussed the delivery of a fairness opinion with UBS.

47. On May 1, 2017, First Horizon agreed to increase the fixed exchange ratio to 1.75 shares of First Horizon stock per Capital Bank share.

48. Also on May 1, 2017, First Horizon's attorneys provided a draft employment agreement between defendant Taylor and First Horizon, providing for the terms of defendant Taylor's post-transaction employment by First Horizon.

49. On May 3, 2017, Sandler rendered its fairness opinion and the Board approved the Merger Agreement.

**The Proposed Transaction**

50. On May 4, 2017, First Horizon and Capital Bank issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> Memphis, Tenn., and Charlotte, N.C. -— First Horizon National Corp. (NYSE: FHN) and Capital Bank Financial Corp. (NASDAQ: CBF) have entered into a definitive agreement that will create the fourth largest regional bank in the Southeast. Under the agreement First Horizon, which has $30 billion in assets, will acquire Capital Bank, which has $10 billion in assets. First Horizon operates 170 branches across Tennessee and the Southeast, and Capital Bank operates 193 branches in the Carolinas, Tennessee, Florida and Virginia. The merger will accelerate First Horizon's strategic plan to enhance its presence in fast-growing markets in the Southeast.
>
> The combined organization will have $40 billion in assets, $32 billion in deposits, $27 billion in loans and more than 300 branches in Tennessee, North Carolina, South Carolina, Florida, Mississippi, Georgia, Texas and Virginia. First Horizon, which is headquartered in Memphis, Tenn., will retain its First Tennessee bank brand in Tennessee, where it has a 153-year history. Branches outside Tennessee will use the Capital Bank name.
>
> Under the agreement, each holder of Capital Bank common stock will be entitled to receive cash or stock with a value equivalent to 1.750 First Horizon shares and $7.90 in cash for each Capital Bank share held, subject to the election allocation and proration provisions of the merger agreement. In the aggregate, Capital Bank shareholders will receive a mix of approximately 80 percent stock and 20 percent

11

cash. After closing, Capital Bank shareholders collectively will own approximately 29 percent of First Horizon's common shares and will have received approximately $411 million in cash. The total transaction value, at yesterday's First Horizon closing stock price, is $2.2 billion.

**Insiders' Interests in the Proposed Transaction**

51.     Capital Bank insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and Capital Bank's public stockholders.

52.     Notably, defendants Taylor and Foss have secured position for themselves following completion of the Proposed Transaction.  According to the Registration Statement, following the closing of the merger, defendant Taylor will be employed as Vice Chairman reporting to the CEO of First Horizon and a member of the board of directors of the combined company alongside defendant Foss.

53.     Further, Company insiders stand to reap substantial financial benefits for securing the deal with First Horizon.  According to the Registration Statement, all unvested equity-based awards held by the Company's executive officers will become vested at the effective time.  The following table sets forth the consideration the Company's executive officers stand to receive in connection with accelerated vesting of their unvested equity-based awards:

| | Stock Options ($) | Restricted Stock ($) |
|---|---|---|
| R. Eugene Taylor | — | 1,917,139 |
| Christopher G. Marshall | — | 1,328,725 |
| R. Bruce Singletary | — | 932,114 |
| Kenneth A. Posner | 53,506 | 701,305 |
| Kenneth J. Kavanagh | — | 546,031 |

54.     Moreover, if they are terminated in connection with the Proposed Transaction, Capital Bank's named executive officers stand to receive substantial merger-related

compensation, as set forth in the following table:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| R. Eugene Taylor | 4,945,178 | 1,917,139 | 27,665 | 6,889,982 |
| Christopher G. Marshall | 3,397,359 | 1,328,725 | 39,760 | 4,765,844 |
| R. Bruce Singletary | 2,344,058 | 932,114 | 27,255 | 3,303,427 |
| Kenneth A. Posner | 1,945,938 | 754,811 | 38,873 | 2,739,622 |
| Kenneth J. Kavanagh | 864,795 | 546,031 | 19,762 | 1,430,588 |

## The Registration Statement Contains Material Misstatements and Omissions

55.    The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Capital Bank's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

56.    Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and First Horizon's financial projections, relied upon by one of Capital Bank's financial advisors, Sandler, in its financial analyses; (ii) the valuation analyses prepared by Sandler in connection with the rendering of its fairness opinion; and (iii) the background process leading up to the Proposed Transaction. Accordingly, Capital Bank stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

### *Material Omissions Concerning Capital Bank's and First Horizon's Financial Projections*

57.    The Registration Statement omits material information regarding the Company's and First Horizon's financial projections relied upon by Sandler for its analyses.

58.    For example, the Registration Statement sets forth:

In connection with its opinion, Sandler O'Neill reviewed and considered, among

13

other things:

\* \* \*

- Publicly available mean analyst earnings per share estimates for Capital Bank Financial for the years ending December 31, 2017 and December 31, 2018, and estimated long-term annual earnings per share growth rate and dividend assumptions for Capital Bank Financial, as provided by the senior management of Capital Bank Financial;

- Publicly available mean analyst earnings per share estimates for First Horizon for the years ending December 31, 2017 and December 31, 2018, as provided by the senior management of First Horizon, and a publicly available mean analyst estimated long-term annual earnings per share growth rate for First Horizon, as directed by the senior management of Capital Bank Financial;

- The pro forma financial impact of the merger on First Horizon based on certain assumptions relating to purchase accounting adjustments, cost savings and transaction expenses, as provided by the senior management of First Horizon . . . .

Registration Statement at 67.

59.     The Registration Statement further sets forth:

***Net Present Value Analyses.*** Sandler O'Neill performed an analysis that estimated the net present value per share of Capital Bank Financial common stock, assuming Capital Bank Financial performed in accordance with publicly available mean analyst earnings estimates for Capital Bank Financial for the years ending December 31, 2017 and December 31, 2018 and estimated long-term annual earnings per share growth rate and dividend assumptions for Capital Bank Financial, as provided by the senior management of Capital Bank Financial. To approximate the terminal value of Capital Bank Financial common stock at December 31, 2021, Sandler O'Neill applied price to 2021 earnings multiples ranging from 18.0x to 22.0x and multiples of December 31, 2021 tangible book value ranging from 180% to 220%. . . .

\* \* \*

Sandler O'Neill also performed an analysis that estimated the net present value per share of First Horizon common stock, assuming that First Horizon performed in accordance with publicly available mean analyst earnings per share estimates for First Horizon for the years ending December 31, 2017 and December 31, 2018, as provided by the senior management of First Horizon, and a publicly available mean analyst estimated long-term annual earnings per share growth rate for First Horizon, as directed by the senior management of Capital Bank Financial. To approximate the terminal value of First Horizon common stock at

14

December 31, 2021, Sandler O'Neill applied price to 2021 earnings multiples ranging from 17.0x to 21.0x and multiples of December 31, 2021 tangible book value ranging from 190% to 230%. . . .

* * *

**Pro Forma Merger Analysis.** Sandler O'Neill analyzed certain potential pro forma effects of the merger, assuming the merger closes at the end of the fourth calendar quarter of 2017. In performing this analysis, Sandler O'Neill utilized the following information and assumptions: (i) publicly available mean analyst earnings per share estimates for Capital Bank Financial for the years ending December 31, 2017 and December 31, 2018, and estimated long-term annual earnings per share growth rate and dividend assumptions for Capital Bank Financial, as provided by the senior management of Capital Bank Financial; (ii) publicly available mean analyst earnings per share estimates for First Horizon for the years ending December 31, 2017 and December 31, 2018, as provided by the senior management of First Horizon, and a publicly available mean analyst estimated long-term annual earnings per share growth rate for First Horizon, as directed by the senior management of Capital Bank Financial; and (iii) certain assumptions relating to purchase accounting adjustments, cost savings and transaction expenses, as provided by the senior management of First Horizon.

*Id.* at 75-77.

60.     However, the Registration Statement fails to disclose any projections for Capital Bank, First Horizon or the pro forma company. Specifically, the Registration Statement fails to disclose: (i) with respect to Capital Bank, (a) EPS estimates for Capital Bank for the years ending December 31, 2017 and December 31, 2018, (b) estimated long-term annual earnings per share growth rate and dividend assumptions for Capital Bank, as provided by the senior management of Capital Bank, and (c) the 2021 earnings and December 31, 2021 tangible book value estimates provided to Sandler for use in its Net Present Value ("NPV") Analysis of Capital Bank; (ii) with respect to First Horizon, (a) EPS estimates for First Horizon for the years ending December 31, 2017 and December 31, 2018, as provided by the senior management of First Horizon, (b) the estimated long-term annual EPS growth rate for First Horizon, as directed by the senior management of Capital Bank, and (c) the 2021 earnings and December 31, 2021 tangible book value estimates provided to Sandler for use in its NPV Analysis of First Horizon; and (iii)

15

with respect to the pro forma company, certain assumptions relating to purchase accounting adjustments, cost savings and transaction expenses, as provided by the senior management of First Horizon.

61. The Registration Statement similarly fails to set forth the "First Horizon Estimates," "First Horizon Capital Bank Financial Projections" and "Pro Forma Estimates" utilized by First Horizon's financial advisor, Barclays Capital Inc. ("Barclays") in its analysis, as well as the "Estimates for Capital Bank Financial" and "Estimates for First Horizon" utilized by First Horizon's other financial advisor, Morgan Stanley & Co., LLC, each of which were either prepared or adjusted by First Horizon management,.

62. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: "Opinion of Capital Bank Financial's Financial Advisor" and "Opinion of First Horizon's Financial Advisors."

***Material Omissions Concerning Sandler's Financial Analyses***

63. The Registration Statement describes Sandler's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Sandler's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Capital Bank's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Sandler's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Capital Bank's stockholders.

64. With respect to Sandler's *NPV Analysis* of Capital Bank, the Registration

16

Statement fails to disclose: (i) the earnings estimates of Capital Bank; (ii) the estimated long-term annual EPS growth rate and dividend assumptions; (iii) the 2021 earnings and December 31, 2021 tangible book value estimates utilized to derive the terminal values; (iv) the inputs and assumptions underlying the discount rates ranging from 8.0% to 13.0%; and (v) the implied perpetuity growth rates corresponding to the assumed terminal multiples.

65.     With respect to Sandler's *NPV Analysis* of First Horizon, the Registration Statement fails to disclose: (i) the earnings estimates of First Horizon; (ii) the estimated long-term annual EPS growth rate; (iii) the 2021 earnings and December 31, 2021 tangible book value estimates utilized to derive the terminal values; (iv) the inputs and assumptions underlying the discount rates ranging from 8.0% to 13.0%; and (v) the implied perpetuity growth rates corresponding to the assumed terminal multiples.

66.     Similarly, with respect to Sandler's *Pro Forma Merger Analysis* of the pro forma company, the Registration Statement fails to disclose: (i) the earnings estimates, long-term annual EPS growth rate and dividend assumptions used in the analysis for Capital Bank; (ii) the earnings estimates and estimated long-term annual EPS growth rate for First Horizon; (iii) the assumptions relating to purchase accounting adjustments, costs savings and transaction expenses, as provided by management of First Horizon; and (iii) the specific accretion and dilution figures resulting from this analysis to EPS and tangible book value, respectively, for the years ending December 31, 2018 through December 31, 2020.

67.     With respect to Sandler's *Comparable Company Analysis* for Capital Bank and First Horizon the Registration Statement fails to disclose the individual multiples for each of the selected public companies analyzed by Sandler, as well as the financial performance metrics for each selected company.

17

68. With respect to Sandler's *Analysis of Selected Merger Transactions* the Registration Statement fails to disclose the individual multiples for each of the selected transactions analyzed by Sandler, as well as any benchmarking analyses Sandler performed for Capital Bank in relation to the target companies.

69. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

70. The omission of this information renders the Registration Statement false and misleading; including, *inter alia*, the following section of the Registration Statement: "Opinion of Capital Bank Financial's Financial Advisor."

**Material Omissions Concerning the Background Process**

71. The Registration Statement fails to disclose or misstates material information regarding the background process leading up to the Proposed Transaction and potential conflicts of interest.

72. The Registration Statement discloses that "[b]etween February 14, 2017 and February 23, 2017, Capital Bank Financial entered into mutual confidentiality agreements with five (including First Horizon) of the seven financial institutions that had been contacted." Registration Statement at 57. However, the Registration Statement fails to disclose whether the confidentiality agreements contain standstill provisions that are still in effect and/or "don't-ask-

18

don't-waive" standstill provisions that are presently precluding these parties from making a topping bid for the Company.

73.     Further, the Registration Statement omits material information regarding potential conflicts of interest of UBS.  Specifically, the Registration Statement fails to disclose the amount payable to UBS in connection with the Proposed Transaction as well as any services UBS performed for Capital Bank and First Horizon in the two years prior to the signing of the Merger Agreement, and the fees received for those services.  In addition, the Registration Statement fails to disclose material information concerning the scope of UBS' engagement, including whether UBS' engagement contemplated providing a fairness opinion, whether UBS was asked to opine on the fairness of the Proposed Transaction and whether UBS was unable to opine on the fairness of the Proposed Transaction.

74.     Full disclosure of all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

75.     Moreover, the Registration Statement provides that, "[i]n early March . . . Sandler [ ] and UBS contacted the four (including First Horizon) remaining financial institutions that had executed mutual confidentiality agreements to formally request that each such party submit a non-binding preliminary indication of interest" (Registration Statement at 58), but fails to disclose whether Sandler and UBS provided the parties with a formal deadline by which they should submit such indications of interest.  The Registration Statement similarly fails to disclose the details of Party A's oral indication of interest, including when it was provided.

76.     In addition, the Registration Statement states that at the April 30, 2017 Board meeting, Sandler discussed with the Board "the environment for other strategic alternatives

available to Capital Bank" (Registration Statement at 60), but fails to disclose any details regarding the "environment for other strategic alternatives."

77.     Finally, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Capital Bank's officers and directors, including who participated in all such communications, including such communications with regard to defendant Taylor's future position as Vice Chairman reporting to the CEO of First Horizon and member of the board of directors of the combined company.

78.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

79.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; and (ii) "Capital Bank's Financial's Reasons for the Merger; Recommendation of the Capital Bank Financial Board of Directors."

80.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

# COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Capital Bank**

81.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

82.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

83.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the sales process for the Company, the financial analyses performed by the Company's financial advisor, and the actual intrinsic standalone value of the Company. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

84.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.

85.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

86.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is

corrected.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

87.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

88.     The Individual Defendants acted as controlling persons of Capital Bank within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Capital Bank and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

89.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

90.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

91.     In addition, as the Registration Statement sets forth at length, and as described

herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

92. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

93. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Capital Bank's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Capital Bank, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Capital Bank stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and

23

setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 17, 2017

Respectfully submitted,

/s/ Janet Ward Black
Janet Ward Black
NC Bar No. 12869
Nancy Meyers
NC Bar No. 23339
WARD BLACK LAW
208 West Wendover Avenue
Greensboro, North Carolina 27401
(336) 510-2104 Direct Dial
(336) 510-2181 Dedicated Facsimile
jwblack@wardblacklaw.com

-and-

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*

25